**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-CV-02089-JLK-DLW

**COLORADO WILD, INC.,
SAN LUIS VALLEY ECOSYSTEM COUNCIL,**

Plaintiffs,

v.

**U.S. FOREST SERVICE,** a federal agency within the U.S. Department of Agriculture,

Defendant.

v.

**LEAVELL-McCOMBS JOINT VENTURE,**

Intervenor-Defendant.
_____

**FINDINGS AND RECOMMENDATIONS RE:
PLAINTIFFS' MOTION TO CONTINUE PRELIMINARY INJUNCTION
THROUGH DECISION ON THE MERITS**
_____

**RECOMMENDATION ENTERED BY MAGISTRATE JUDGE DAVID L. WEST**

Plaintiffs' Motion to Continue Preliminary Injunction though Decision on the Merits was referred to this Magistrate Judge by Judge John L. Kane on May 15, 2007.

Plaintiffs have filed a Motion to Modify and Extend the November 22, 2006 Preliminary Injunction and, **IT IS RECOMMENDED that the Motion to Extend the November 22, 2006 Preliminary Injunction be granted until the appeal is heard on the merits. It is also recommended that the Preliminary Injunction be modified to permit the U.S.F.S. to conduct annual road maintenance on U.S.F.S. Road 391 and make any necessary improvements to**

1

**Alberta Lake (*i.e.*, a proposed boat ramp), as it deems appropriate.** Road 391 is the public's access to the forest and specifically to Alberta Lake, and the U.S.F.S. should be allowed to do annual maintenance to assure public safety. No other modification is recommended.

On November 16, 2006, I recommended that the Plaintiffs' Motion for Temporary Restraining Order be granted because the Plaintiffs demonstrated a likelihood of success on the merits and that the balance of equities weighed in favor of granting the temporary restraining order. It was recommended that Defendant was to refrain from authorizing, through the issuance of a Special Use Permit or any other communication, any ground disturbing construction activity on either the Snowshed, Tranquility or Forest Service 391 Roads. It was recommended that Defendant was further enjoined from submitting any application or entering into any agreement with the Colorado Department of Transportation (CDOT) for access permits connecting the Snowshed, Tranquility or Forest Service 391 Roads with U. S. Highway 160. It was also recommended that Defendant be enjoined from taking any other action implementing the Application for Transportation and Utility Systems and Facilities for the Village at Wolf Creek Final Environmental Impact Statement (FEIS) and Record of Decision (ROD).

Judge Kane adopted this recommendation with modifications. The parties negotiated a Stipulation (Doc. #28) in which they agreed to extend the TRO which the Court approved and entered the following Preliminary Injunction:

1. The Defendant is enjoined from engaging in any conduct or activities proscribed in the Recommendation including**:**

   A. Authorizing, through issuance of special use permits, implementation of the terms of such permits, (*e.g.* pre-requisite pre-work meetings), through written or oral communication, or otherwise, any ground disturbing construction activity on either the Snowshed or Tranquility Roads, or Forest Service Road 391;

    B. Submitting any application, or entering into any agreement regarding such application, to the Colorado Department of Transportation for access permits connecting the Snowshed or Tranquility Roads, or Forest Service Road 391, with U.S. Highway 160;

    C. Taking any other action implementing the Application for Transportation and Utility Systems and Facilities for the Village at Wolf Creek Final Environmental Impact Statement and Record of Decision; and

    D. Paragraphs B and C of this injunction do not prohibit the Agency from undertaking meetings or conducting further planning regarding the proposed Village at Wolf Creek, including the preparation and/or discussion of applications for access, with Colorado Department of Transportation (CDOT), Defendant-Intervenor Leavell McCombs Joint Venture, or the Wolf Creek Ski Area.

2. In addition, Intervenor-Defendant Leavell-McCombs Joint Venture, as Defendant's Permittee, is also ENJOINED from engaging in any ground disturbing construction activity on either the Snowshed or Tranquility Roads, or Forest Service Road 391.

3. This injunction shall remain in effect until the issuance of the Court's ruling on the magistrate's findings and recommendation on the merits of the instant administrative appeal, or May 1, 2007, whichever comes first. If after May 1, 2007, there has not yet been a ruling on the merits from the District Court, then the U. S. Forest Service shall give Plaintiffs 10 calendar days' notice before commencing any ground-disturbing activity, or the submission of CDOT permit applications in this case. If after May 1, 2007, there has been no ruling from the District Court on the merits of this case, Plaintiffs expressly reserve the right to move for an additional TRO or preliminary injunction as necessary to address any imminent ground-disturbing activity, permit applications, or final decisions implementing the FEIS and ROD.

    The proposed briefing schedule was adopted with the United States Forest Service (USFS) to lodge the Administrative Record on December 22, 2006 and the Plaintiffs to notify Defendants of any intention to supplement the record by January 5, 2007. The parties subsequently agreed to extend the Preliminary Injunction to June 15, 2007 to allow for merits briefing. Significant delays have occurred with the voluminous record of approximately 35,000 pages. Currently the parties are negotiating a proposed protective order to allow certain disputed documents (deliberative privilege) to be included in the record. Documents have been exchanged between the parties as recently as May

3

31, 2007. Needless to say, the parties have not started briefing the merits. Once the protective order is in place, the Court anticipates making a recommendation on Plaintiffs' Motion to Complete and Supplement the Administrative Record, and for Leave to Conduct Limited Discovery to Develop the Administrative Record within seven days.

## **STANDARDS**

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. The moving party must show:

1. The movant will suffer irreparable injury unless the injunction issues;

2. The threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party;

3. The injunction, if issued, would not be adverse to the public interest; and

4. There is a substantial likelihood that the movant will eventually prevail on the merits.

***Dominion Video Satellite, Inc. v. Echostar Satellite Corp.***, 356 F.3d 1256, 1260 (10th Cir. 2004) (applying the standard articulated in ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980)).

The 10th Circuit has adopted a somewhat more flexible standard if the injunction sought requires the non-movant to stop acting in a manner that disturbs the status quo. The movant may establish the likelihood of success by showing questions "so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." ***Sportsmen's Wildlife Defense Fund v. United States Department of the Interior***, 949 F. Supp. 1510, 1523 (D. Colo. 1996), ***O Centro Espirita Beneficiente Unia Do Vegetal v. Ashcroft***, 389 F.3d 973 (10th Cir. 2004), ***Schrier v. University of Colorado***, 427 F. 3d 1253 (10th Cir. 2005).

Plaintiffs are requesting an injunction that does not require the Defendant to act affirmatively in a particular way, but requests "to 'preserve the relative positions of the parties until a trial on the merits can be held.' " *O Centro*, 389 F.3d at 999-1001 (Seymour, C.J.) (quoting *Camenisch*, 451 U.S. at 395. Plaintiffs are requesting that construction not start and the ground not be disturbed until the merits are decided.

A "procedural violation of NEPA, standing alone, is insufficient as a basis for injunctive relief." *George Washington Home Owners*, 863 F. Supp. at 1427. The Plaintiffs must show tangible harm to the environment that is tied to the Plaintiffs' interests, and show that the "environmental harm will result in irreparable injury to the specific interests of the Plaintiffs and its members." *Colorado Wild v. U. S. Forest Serv.*, 299 F. Supp. 2d 1184, 1190 (D. Colo. 2004).

The actions of Defendant are examined under the arbitrary and capricious standard. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994). "Reviews of agency action in the district courts must be processed as appeals," and courts are required to "engage in a substantive review of the record to determine if the agency considered relevant factors or articulated a reasoned basis for its conclusions." *Olenhouse*, 42 F.3d at 1580.

Section 1323(a) of the Alaska National Interest Lands Conservation Act guarantees the owners of in holdings a right of access to their lands subject to reasonable regulation by the Secretary of Agriculture, so as to secure to the owner the reasonable use and enjoyment of the land.

## ANALYSIS

### 1. Irreparable Injury.

Although Defendant and Intervenor argue that minimal environmental impacts would occur and could be restored, the U.S.F.S. found significant environmental impacts would be caused by the

construction of Tranquility Road. *See e.g. ROD at 17.* "The alternatives with both the ski area and the Village using Tranquility Road would require more U.S.F.S. effort, expense, and complexity of permit administration to overcome compatibility issues and would create more effort, expense and complexity of traffic management for the ski area and the Applicant." According to the Second Declaration of Ryan Demmy Bidwell, Ex. 9, Plaintiffs' Motion to Continue Preliminary Injunction, and Christine Canaly, Ex. 10, Plaintiffs' Motion to Continue Preliminary Injunction, the proposed road construction would significantly and irreparably harm the environment. Defendant's and Intervenor's proposed order attached to their responses, and request to construct and use the Tranquility Road is contrary to the ROD, EIS and the holding of the U.S.F.S. Appeal Reviewing Officer. The ROD: 1) restricts use of Tranquility Road to "shuttle buses or other mass transportation and for emergencies"; 2) establishes that the Snowshed Road, and not Tranquility Road, to be Intervenor's "primary unrestricted access to the Village"; and 3) required "the Applicant to construct both roads (Snowshed and Tranquility) to provide for increased public safety and operational capacity with the Wolf Creek Ski Area." *See Doc. #91 at 6, 44*; WC06779 (ROD at 6). Irreparable harm to the environment would also occur if the Colorado Department of Transportation (CDOT) were to commit to a course of action that becomes more difficult to correct the longer it continues.

**2. The Threatened Injury To The Movant Outweighs Whatever Damages The Proposed Injunction May Cause The Opposing Party.**

The U.S.F.S. has not asserted that it would be harmed by the extension of the Preliminary Injunction, nor can the Court imagine any such harm. The harm to Plaintiff of 1) ground disturbance, and 2) the setting in motion possible further commitments by CDOT or Mineral County outweighs any harm that might occur to the U.S.F.S.

Intervenor, Leavell-McCombs Joint Venture, may suffer delay and economic hardship, but such harm is not irreparable and does not outweigh the harm suffered by Plaintiffs. "More than pecuniary harm must be demonstrated" in order to avoid a preliminary injunction. *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986). *See also* *Park County Resource Council, Inc. v. Dept. of Agriculture*, 817 F.2d 609 (10th Cir. 1987). On November 13, 2006 the U.S.F.S. issued a Special Use Permit - Construction Stipulations that prohibits the use of the Tranquility Road extension when built and required physical barrier to prohibit use upon completion of construction. *See Doc. #16-4,* Fed. Defs'. Ex. 111, Part 3 at ¶ 22-23. Intervenor's interest in constructing a road it cannot use does not outweigh the harm to Plaintiffs' environmental interests. Intervenor also has limited access to its property on U.S.F.S. Road 391. Intervenor has represented to the U.S.F.S. "that the Village will be developed even if no action was selected." *See* WC05618 (FEIS at 1 - 27). If this is correct, the Intervenor already has reasonable use and enjoyment of its property as contemplated by ANILCA.

### 3. The Injunction, If Issued, Would Not Be Adverse To The Public Interest.

The public will not be harmed by a short delay required for the Court to hear the merits on appeal. Intervenor received the land in 1986 in a land exchange with the U.S.F.S. The U.S.F.S. has been diligent in preparing the enormous Administrative Record, with documents being furnished to Plaintiffs as recently as May 31, 2007. Additional documents may be forthcoming if the parties agree to a proposed protective order. "[T]here is an overriding public interest in preservation of the undeveloped character of the area recognized by [NEPA]. This public interest in preserving the character of the environment is one that the Plaintiffs may seek to protect by obtaining equitable relief." *Wyoming Outdoor Coordinating Council v. Butz*, 484 F.2d, 1244 at 1250 (10th Cir. 1973).

7

The Court recommends that no bond or security be required in this case.

### 4. **Substantial Likelihood Of Success On The Merits.**

With the first three conditions of the *Lundgrin* met, and where the extension of the injunction requested is prohibitory, in that it would require the U.S.F.S. and Intervenor to stop acting in a manner that disturbs the status quo, the Plaintiff may establish the substantial likelihood the Plaintiff may prevail by simply raising issues "so serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberative investigation." *Walmer v. United States Dep't. of Defense,* 52 F.3d 851, 854 (10th Cir. 1995).

Whether or not the U.S.F.S. failed to analyze the impact of "connected actions" such as the (1) Village and (2) CDOT highway access permit to U.S. Highway 160, is a question so "serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberative investigation." *Walmer.* It appears the U.S.F.S. limited the scope of the FEIS and ROD to the isolated impact of an access road across U.S.F.S. land, to the exclusion of connected actions, 1) design, permit application and construction processes for connecting the approved Snowshed and Tranquility Roads to Highway 160, and 2) the development of the Village at Wolf Creek adjacent to U.S.F.S. land and impacting same. The FEIS and ROD addressed only direct impact of the footprint of the access roads over U.S.F.S. lands. It justified this limited scope of analysis because Intervenor represented that it could develop the Village without the requested access by the use of U.S.F.S. Road 391. *See* Doc. #1 at ¶ 52-67.

During the development of the FEIS the U.S.F.S. changed its view that the Village was a "connected action" and instead viewed the Village in the cumulative impacts section. Exh. 11, Exh. 12 LMJV003259  Plaintiffs' Reply in Support of Motion to Continue Preliminary Injunction (Doc.

8

#93.) The U.S.F.S. knows that "[b]efore either road may be built, the Applicant is required to obtain the necessary highway access permit from the Colorado Department of Transportation. (Doc. #90 at 5, WC01494). A June 30, 2005 letter from Richard Reynolds of CDOT to the U.S.F.S. contends that Highway 160 access should be a "connected action" and not addressed in the cumulative impact section. Exh. 13 to Plaintiffs' Reply, Doc. #93.

Initially, the U.S.F.S. analysis provided a range of alternatives that included an alternative of "no action" that would not allow full build out of the Village. Eventually, the final FEIS and ROD (Page 31) WC06804 provided a "no action" alternative that presumed full build out of the Village based upon Intervenor's use of U.S.F.S. Road 391. This resulted in a very narrow analysis in the ROD and FEIS that minimized the impact that the Village and access onto U.S. Highway 160 would have. "While it is true that Defendants could reject alternatives that did not meet the purpose and need of the project, they could not define the project so narrowly that it foreclosed a reasonable consideration of the alternatives." *Davis v. Mineta*, 302 F.3d 1104, 1109 (10th Cir. 2002). *Colo. Envtl. Coalition v. Dombeck*, 185 F.3d 1162, 1174-75 (10th Cir. 1999). What might have caused this shift will be discussed later.

There is also a serious and substantial question as to whether or not Forest Supervisor Clark's letter of August 28, 2006 constituted a post-decision modification of the ROD, indefinitely delaying the construction of the Snowshed Road. The ROD required the second access road to protect public safety. (WC06779 ROD). The Appeal Reviewing Officer stated regarding the second access road (Snowshed);

> The building of this resort area will require hundreds of workers on-site during all times of the year, but logically, the summer will see the most construction activity. **Once built, to *any* level between zero and the maximum buildout** authorized by

> the PUD, there will be hundreds or thousands of people at the Village in the wintertime, and many vacationers and property owners in the Village during the summer as well. **During all seasons of the year it is imperative that there be two roads for access to and egress from the property.** Colorado is a state know for wildfires in the summertime. The Wolf Creek area is one of the snowiest locations in the State in the winter. **One access route does not provide sufficient emergency access, and this is true whether the property is in the construction stage or construction has been completed. Delaying the construction of the Snow Shed Road will not serve to meet the emergency egress routes that public safety requires, described at ROD-20.**

WC07670 (emphasis added). These recommendations and findings were adopted into the Deputy Regional Forester's denial of the LMJV administrative appeal. WC07663.

The interesting question ultimately to be determined on the merits, is, what caused the U.S.F.S. to shift the Village and Highway 160 access away from a connected impact? Why did the U.S.F.S. allow the only "no action" alternative to include construction of the Village in the FEIS?

Plaintiffs claim that the FEIS and ROD are a product of an incomplete administrative record and improper influence by the Intervenor on the U.S.F.S. and its agent Tetra Tech. The Memorandum of Understanding (WC21,137) states the relationship between the U.S.F.S., Proponent-Intervenor and the Prime Consultant Tetra Tech. Tetra Tech was to serve under the direct supervision of the U.S.F.S. to prepare an environmental analysis for the U.S.F.S. All data collected by the Prime Consultant was to be inserted in the administrative record. "All requests from the proponent for communication and information exchange with members of the ID team or Prime Consultant will be arranged by the Forest Service principal point of contact." *See* Attachment A to MOU (WC21147).

Plaintiffs allege the following contacts were improper and that the Prime Consultant was not objective:

1. Some communications between Tetra Tech and Intervenor were destroyed when Tetra Tech returned leased laptop computers to the lessor,

2. December 16 & 20, 2004 e-mail, Exh. 3, Plaintiffs' Motion to Continue Preliminary Injunction.

3. January 13, 2005 e-mail Blauer-Honts, Exh. 4, Plaintiffs' Motion to Continue Preliminary Injunction.

4. June 7, 2004 e-mail Blauer-Honts, Exh. 5, Plaintiffs' Motion to Continue Preliminary Injunction.

5. January 27, 2005 e-mail Blauer-Honts, Exh. 6, Plaintiffs' Motion to Continue Preliminary Injunction.

6. June 28, 2005 e-mail Blauer-Honts, Exh. 18, Plaintiffs' Reply in Support of Motion to Continue Preliminary Injunction.

7. June 17, 2005 e-mail, Exh. 19, Plaintiffs' Reply in Support of Motion to Continue Preliminary Injunction.

8. November 2005 e-mails, Exh. 20-23, Plaintiffs' Reply in Support of Motion to Continue Preliminary Injunction.

9. December 1, 2005 e-mail Honts-Blauer, Exh. 24, Plaintiffs' Reply in Support of Motion to Continue Preliminary Injunction.

Plaintiff alleges that Tetra Tech went from a neutral independent contractor for the U.S.F.S. and became an aggressive advocate for the Proponent-Intervenor.

This allegation and the supporting documentation definitely raises a question "so serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberative investigation. *Walmer*. This creates a substantial likelihood that the Plaintiffs may prevail.

As a result, this Court recommends the continuance of the Preliminary Injunction through the decision on the merits, and the modification mentioned previously.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

**DATED: June 5, 2007**

**BY THE COURT:**

**s/David L. West**
**United States Magistrate Judge**